# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00784-CV

### T. M. and J. R., Appellants

### v.

### Texas Department of Family and Protective Services, Appellee

### FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT
### NO. 262, 252-B, HONORABLE JACK WELDON JONES, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

Appellants T.M. (Father) and J.R. (Mother) appeal from the trial court's order terminating their parental rights to their minor child, J.M.[1] Father and Mother each contend that the evidence is factually insufficient to support the termination of their parental rights. Mother also contends that the trial court wrongfully admitted evidence regarding advertisements for "escort" services that Mother placed. We will affirm the trial court's order terminating their parental rights.

---

[1] To protect the privacy of the parties, we refer to the child, her parents, and other family members by their initials or by their relationship to J.M. *See* Tex. Fam. Code § 109.002(d).

The Texas Department of Family and Protective Services (the Department) became involved in this case in February 2013, when J.M. was four months old, after receiving a report of a physical altercation between Mother and her own mother, C.G. An investigator working for the Department testified at trial that Mother and C.G. were both tested for drugs after the altercation and that C.G. tested positive for methamphetamine and Mother tested positive for both cocaine and methamphetamine. The Department subsequently removed J.M. from Mother and placed her with a foster family. In its petition in a suit affecting the parent-child relationship, the Department also requested the termination of the rights of J.M.'s parents if reunification with them could not be achieved. In August 2013, a paternity test revealed that J.M. was Father's child.

In February 2014, officers with the Killeen Police Department arrested Father and Mother at the High Five Inn. According to an officer who testified at trial, Father and Mother were apprehended in a room containing crack cocaine, methamphetamine, and "spice," or synthetic marihuana. The officer also testified that there was a digital scale near the drugs, which led the officer to believe that Father and Mother were weighing the drugs to sell them. Officers further testified that Father pushed an officer before being handcuffed and that Mother repeatedly screamed

---

[2] The facts recited in this opinion are taken from evidence presented at trial. Although we have considered the entire record, because this is a memorandum opinion affirming the trial court's termination order, we do not exhaustively detail the evidence. *See* Tex. R. App. P. 47.4 ("If the issues are settled, the court should write a brief memorandum opinion no longer than necessary to advise the parties of the court's decision and the basic reasons for it."); *In re A.B.*, 437 S.W.3d 498, 507 (Tex. 2014) (holding courts of appeals need not detail the evidence when affirming jury's termination findings).

that she and Father were "high on spice." Officers testified that Mother fought the officers and bit one of them before finally being subdued.

At trial, the jury determined that the parent-child relationship between J.M. and Father and Mother should be terminated and that the Department should be appointed J.M.'s managing conservator. The trial court signed a decree of termination consistent with the jury's findings. The trial court later denied both Father's and Mother's motions for new trial, and this appeal followed.

## DISCUSSION

### *Standard of review*

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001. In this appeal, Father has challenged the factual sufficiency of both the jury's statutory-ground finding and the best-interest finding, and Mother has challenged the factual sufficiency of the best-interest finding. "The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable fact-finder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d 17, 18–19 (Tex. 2002). We assume that the jury resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable fact-finder could have disbelieved or found incredible. *J.F.C.*, 96 S.W.3d

3

at 266.  Evidence is factually insufficient only if a reasonable fact-finder could not have resolved the disputed evidence in favor of its finding and if that disputed evidence is so significant that the jury could not reasonably have formed a firm belief or conviction that its finding was true.  *Id.*

Sufficient evidence of only one statutory ground is necessary to support a judgment in a parental-rights-termination case.  *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).  Therefore, when, as here, multiple statutory grounds for termination are alleged and the trial court issues a broad-form question asking the jury whether the parent-child relationship should be terminated, we must uphold the jury's finding if any of the statutory grounds alleged supports it.  *See Spurck v. Texas Dep't of Family & Protective Servs.*, 396 S.W.3d 205, 221 (Tex. App.—Austin 2013, no pet.) (citing *In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied) (per curiam)).

### Father: statutory grounds for termination

In his first issue on appeal, Father contends that the evidence is factually insufficient to support termination on any of the statutory grounds alleged by the Department.  The Department alleged three statutory grounds supporting termination of Father's parental rights.  These allegations corresponded to Texas Family Code section 161.001(1), subsections (D), (E), and (O).  We will focus our analysis on the ground stated in part of subsection (E), which provides that parental rights may be terminated if the parent "engaged in conduct . . . which endangers the physical or emotional well-being of the child."  Tex. Fam. Code § 161.001(1)(E); *see Spurck*, 396 S.W.3d at 221 ("Only one statutory ground is necessary to support a judgment in a parental-rights-termination case."); *see also N.A.B. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00377-CV, 2014 WL 6845179,

4

at *2 (Tex. App.—Austin Nov. 26, 2014, no pet.) (mem. op.) (focusing analysis on subsection (E) when trial court submitted three statutory grounds to jury).

To constitute endangerment under subsection (E), the parent's conduct need not be directed at the child. *In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012). Conduct may endanger a child even if it does not cause the child to suffer actual injury. *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam) (quoting *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). The conduct may also include actions the parent took before the child's birth. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009).

It is well-established that a parent's illegal drug use may constitute endangerment. *See id.* ("[A] parent's use of narcotics and its effect on his or her ability to parent may qualify as an endangering course of conduct."); *Walker v. Texas Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("Because it exposes the child to the possibility that the parent may be impaired or imprisoned, illegal drug use may support termination under [subsection (E)]."); *In re S.N.*, 272 S.W.3d 45, 52 (Tex. App.—Waco 2008, no pet.) ("Evidence of illegal drug use or alcohol abuse by a parent is often cited as conduct which will support an affirmative finding that the parent has engaged in a course of conduct which has the effect of endangering the child."); *Vasquez v. Texas Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (overruling factual sufficiency challenge to termination under subsection (E) although there was no direct evidence that parent's drug use injured child); *see also N.A.B.*, 2014 WL 6845179, at *2 (stating parent's use of narcotics may qualify as endangering course of conduct).

Domestic violence may also constitute endangerment, even if the violence is not directed at the child. *See In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) ("Domestic violence may be considered evidence of endangerment. If a parent abuses or neglects the other parent or other children, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct.") (citation omitted); *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being. Domestic violence, want of self control, and propensity for violence may be considered as evidence of endangerment.") (citation omitted); *see also N.A.B.*, 2014 WL 6845179, at *2.

Finally, a parent's criminal activity or incarceration can also constitute endangerment under subsection (E), especially if the parent has multiple convictions or engages in criminal activity while knowing that his or her parental rights are in jeopardy. *See Boyd*, 727 S.W.2d at 534 ("We hold that if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under [predecessor to subsection (E)] is supportable."); *In re C.A.B.*, 289 S.W.3d 874, 885 (Tex. App.—Houston [14th Dist.] 2009, no pet.) ("[Mother] knew her parental rights were in jeopardy, yet she continued to engage in criminal activity that resulted in being jailed."); *In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("When parents are incarcerated, they are absent from the child's daily life and are unable to provide support, and when parents like appellant repeatedly commit criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's living environment and emotional well-being."); *In re AWT*, 61 S.W.3d 87, 89 (Tex. App.—Amarillo 2001, no pet.) (per curiam) ("Authority holds that intentional criminal activity

6

which exposed the parent to incarceration is relevant evidence tending to establish a course of conduct endangering the emotional and physical well being of the child.").

We recognize that when Father learned that J.M. might be his child, he voluntarily submitted to paternity testing. The jury heard evidence that when the results established his paternity, Father desired to be a part of J.M.'s life, visited J.M., and was respectful to J.M.'s guardian ad litem. In addition, Mother testified that Father threatened to leave Mother because of Mother's continued drug use. We also agree with Father's contention that the majority of the evidence that the Department presented at trial was relevant to the termination of Mother's parental rights, not to the termination of Father's rights.

Nevertheless, at trial, the Department did present undisputed evidence that Father had been convicted of the following offenses:[3]

- assault with bodily injury to a family member (2010)[4]
- assault with bodily injury to a family member (2011)
- possession of marihuana (on a military base) (2011)
- assault with family violence (2012)
- escape from custody (2012).

In addition, the jury heard evidence that after Father learned that J.M. was his child, he was convicted of resisting arrest and possession of a controlled substance of four grams or more but less than 200 grams because of his involvement in the High Five Inn incident. At the termination

---

[3] The years listed are the years when the offenses occurred.

[4] The Department also presented evidence that Father violated the conditions of the deferred adjudication he received for the 2010 offense by testing positive for marihuana, driving while intoxicated, driving while license invalid, fleeing the scene, and admitting to using marihuana, alcohol, and "[e]cstasy."

trial, Father testified that he did not know there were any drugs in the room. However, the jury was free to believe that Father was justly convicted of these offenses. *See In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) ("[T]he court of appeals must nevertheless still provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses.").

In light of the entire record, we determine that the jury could have reasonably formed a firm belief that Father "engaged in conduct . . . which endangers the physical or emotional well-being of the child." Tex. Fam. Code § 161.001(1)(E). Father's "pattern of crime, imprisonment, drug use, and violence against family members demonstrates a deliberate course of conduct from which a reasonable trier of fact could have found that [Father] endangered [J.M.'s] emotional and physical well-being." *See Walker*, 312 S.W.3d at 618; *see also R.Z. v. Texas Dep't of Family & Protective Servs.*, No. 03-14-00412-CV, 2014 WL 5653272, at *6 (Tex. App.—Austin Oct. 29, 2014, no pet.) (mem. op.) ("Here, the jury could have credited the evidence of illegal drug use, domestic violence, and criminal activity by [mother] both before and after [child] was removed to find that [mother] engaged in a conscious course of conduct that endangered her child."). Therefore, we conclude that the evidence is factually sufficient to support the termination of Father's parental rights under subsection (E). Accordingly, we overrule Father's first issue.

### Father: best interest of the child

In his second issue, Father contends that the evidence is factually insufficient to support the jury's determination that it is in J.M.'s best interest to terminate Father's parental rights.

8

In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). These factors include (1) the child's wishes, (2) her emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent which indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds*, *J.F.C.*, 96 S.W.3d at 267 n.39.

Father's convictions and history of drug use, discussed above, are relevant to several *Holley* factors. *See Smith v. Texas Dep't of Protective & Regulatory Servs.*, 160 S.W.3d 673, 679 (Tex. App.—Austin 2005, no pet.) ("Although proving grounds for termination under section 161.001(1) does not relieve the Department of proving termination is in the best interest of the child under section 161.001(2), the same evidence may be probative of both issues."). Father's criminal activity calls into question his parenting abilities and constitutes acts indicating that his parent-child relationship with J.M. is not proper. Father's crimes were not isolated incidents occurring in the distant past—his convictions occurred within the last five years before trial and are evidence

9

of a pattern of behavior inconsistent with providing a safe environment for a child. *See Walker*, 312 S.W.3d at 618 (jury could find that father's pattern of crime, imprisonment, drug use, and violence endangered child). Moreover, at the time Father was arrested at the High Five Inn, he had only recently been released from federal prison. Although Father presented evidence that he completed a "Men's Life-Skills Course" and an "Anger Management class" while incarcerated and has since obtained employment and housing, "in considering the best interest of the child, evidence of a recent turn-around in behavior by the parent does not totally offset evidence of a pattern of instability and harmful behavior in the past." *Smith*, 160 S.W.3d at 681.

In contrast to the uncertain and potentially dangerous living environment indicated by Father's pattern of criminal behavior, the Department presented evidence that the foster parents with whom J.M. was living at the time of trial provided a stable environment. The jury heard evidence that J.M. has lived with her foster parents almost her entire life, that her foster parents intend to adopt J.M., and that the foster parents' other children are doing well. It is true that Father did not request custody of J.M. at trial; instead, Father only sought to maintain parental rights in the hope of one day obtaining custody. However, in determining the best interest of J.M., the jury was entitled to consider that keeping J.M. in foster care temporarily, instead of allowing the foster parents to adopt her, would leave J.M. "in limbo" with an uncertain future. *See id.* at 683.

In light of the entire record, we determine that the jury could have reasonably formed a firm belief that it is in J.M.'s best interest to terminate Father's parental rights. We therefore conclude that factually sufficient evidence exists to support the jury's best-interest finding and the termination of Father's rights. Accordingly, we overrule Father's second issue.

### Mother: admission of evidence of escort services

In her first issue, Mother contends that the trial court wrongfully admitted evidence regarding advertisements Mother placed offering escort services. At trial, Mother objected to the admission of these ads on the ground that they were not relevant because they did not show that Mother endangered her child in any way. Mother also argued that the evidence was more inflammatory and prejudicial than probative. *See* Tex. R. Evid. 403. On appeal, Mother additionally argues that the ads are not relevant because the Department did not prove at trial that Mother violated her family service plan or any laws by placing the ads. We review a trial court's ruling on the admission of evidence for an abuse of discretion. *R.Z.*, 2014 WL 5653272, at *3 (citing *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005)).

This Court addressed a similar question in *R.Z.*, where the mother challenged the trial court's decision to admit evidence that she had posted advertisements for escort services on a website. *See id.* at *3–4. In that case, this Court upheld the admission of the ads, reasoning that they were relevant to several *Holley* factors and noting that Rule 403 is "an extraordinary remedy," and "the best interest of the child must be the court's primary consideration in a suit affecting the parent-child relationship." *Id.* at *4 (internal quotation marks omitted). We likewise conclude that the evidence Mother complains of was relevant to a determination of the child's best interest and that the trial court did not abuse its discretion by declining to exclude the evidence under Rule 403. Even if we assume without deciding that it was legal for Mother to post the ads for escort services, the ads were clearly of a sexual nature, and Mother testified that she had earned money from providing the services advertised. The jury could have concluded that providing escort services,

11

even if legal, constituted conduct that could pose emotional or physical danger to her child. Accordingly, we overrule Mother's first issue.

### *Mother: best interest of the child*

In her second issue, Mother contends that the evidence is factually insufficient to support the jury's determination that it is in J.M.'s best interest to terminate Mother's parental rights. In analyzing the factual sufficiency of the evidence, we consider the *Holley* factors discussed above. *See R.R.*, 209 S.W.3d at 116.

At trial, the Department presented undisputed evidence that Mother was convicted of the following offenses:[5]

- Possession of a controlled substance (less than 1 gram) (2005)
- Assault with bodily injury (2005)
- Possession of cocaine (4 to 200 grams) (2006)
- Accident involving damage to vehicle (2010)[6]
- Failure to identify (2011)
- Failure to identify (2012)
- Possession of a controlled substance (4 to 200 grams) (2014)[7]
- Possession of controlled substance (less than 2 oz.) (2014)
- Resisting arrest (2014)
- Assault on a public servant (2014).

---

[5] The years listed are the years when the offenses occurred.

[6] Mother testified that she did not have a driver's license when she was in the accident that led to this conviction. Mother further testified that she has never had a driver's license.

[7] The four offenses from 2014 were related to Mother's involvement in the High Five Inn incident.

In addition, Mother testified that she was 30 years old at the time of trial and that she had spent eight or nine years of her life incarcerated. Indeed, Mother was incarcerated at the time of trial. Although Mother offered testimony attempting to minimize her wrongdoing with respect to several of these offenses, the jury could have rejected her version of events. *See A.B.*, 437 S.W.3d at 503 (fact-finder is sole arbiter of witness credibility).

Mother testified to extensive drug use spanning many years. She testified that she began using marihuana when she was 15 years old. Mother further testified that she used "coke" when pregnant with J.M., although she stated that once she found out she was pregnant she stopped taking drugs for the duration of her pregnancy. She also admitted to using "meth," "ecstasy," and "spice." The Department presented evidence that Mother tested positive for both cocaine and methamphetamine after the altercation with C.G. that led to J.M.'s removal.

At trial, the Department called Dr. Michael Campbell, a psychologist who testified that Mother suffers from a number of disorders and that Mother's dysfunctional childhood and erratic employment would make it difficult for Mother to be a good parent to J.M. Dr. Campbell opined that returning J.M. to Mother at that time or in the near future would not be in J.M.'s best interest. Mother testified that she had never before been diagnosed with some of the disorders Dr. Campbell discussed but did testify that she had previously been diagnosed with post-traumatic stress disorder, depression, and bipolar disorder (which Mother described as "mood swings").

As discussed above, the Department also presented evidence that Mother had posted advertisements for escort services and that Mother had made money by providing such services. *See R.Z.*, 2014 WL 5653272, at *4. In addition, the jury heard evidence of the altercation between

Mother and C.G., which allegedly occurred in front of J.M. and J.M.'s older sibling. According to Mother, C.G. began the altercation by accusing Mother of taking J.M. around a pedophile (which Mother denied).

We recognize that the evidence presented at trial showed that Mother has faced enormous obstacles in her life, including sexual abuse when she was a child. Nevertheless, in light of the entire record, we conclude that the evidence of Mother's history of criminal activity, drug use, incarceration, mental health issues, and erratic employment was sufficient to allow the jury to reasonably form a firm belief that it is in J.M.'s best interest to terminate Mother's parental rights. Because the evidence is factually sufficient to support the jury's finding, we overrule Mother's second issue.

## CONCLUSION

Having overruled each of Father's and Mother's issues, we affirm the order of the trial court terminating their parental rights.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Affirmed

Filed: May 21, 2015

14